UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-24442-COOKE/DAMIAN

MICHAEL BALTER,

    Plaintiff,

vs.

TINSLEY ADVERTISING &
MARKETING, INC.,

    Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES WITH SUPPORTING MEMORANDUM OF LAW

Defendant TINSLEY ADVERTISING & MARKETING, INC. ("Tinsley"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1), hereby files this Motion to Dismiss Plaintiff's Complaint for Damages with Supporting Memorandum of Law ("Motion") and states the following in support thereof:

1. Plaintiff, Michael Balter ("Balter"), initiated this action on December 26, 2021 when he filed his single-count Complaint for Damages ("Complaint") against Tinsley. *See* ECF No. 1. In the Complaint, Balter alleges that Tinsley violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA") by failing to provide him with a notice of his COBRA rights following his termination of employment with Tinsley in November 2021. *See* ECF No. 1.

2. The Complaint should be dismissed because Balter does not have standing under Article III to proceed with this litigation, and thus, the Court is without subject-matter jurisdiction to hear the claims.

3. Specifically, Balter has failed to allege a concrete injury, let alone that there is a causal nexus between such injury and any action by Tinsley, for two reasons.

4. First, Balter was not entitled to any notification of his COBRA rights following his termination as he was not actively enrolled in Tinsley's group health plan sponsored by

ADP TotalSource at the time of his termination.  Thus, it is evident that Balter did not suffer any cognizable injury in not receiving a COBRA notice.

5.     Second, it is clear that Balter already had healthcare coverage through Medicare at the time of his termination from Tinsley.  Thus, it is evident that Balter could not have suffered an injury caused by any failure on the part of Tinsley to provide him with notice of his rights under COBRA following his termination as there was no need for Balter to elect COBRA coverage during this time.

6.     Thus, without establishing a concrete injury and showing that any action on the part of Tinsley caused a concrete injury, Balter does not have standing to pursue his COBRA claim against Tinsley, and the Complaint should be dismissed for a lack of subject matter jurisdiction.

WHEREFORE, Tinsley respectfully requests that this Court grant the Motion and dismiss the Complaint with prejudice.

## MEMORANDUM OF LAW

**I.     Facts Alleged in the Complaint.**

The allegations in the Complaint are straightforward.  Balter was employed by Tinsley through the time of his termination on November 5, 2021.  ECF No. 1 at ¶ 9.  Following Balter's termination, he alleges that Tinsley violated his COBRA rights in two ways: (1) Tinsley, as Balter's employer, failed to notify its group health insurance plan's administrator about Balter's termination, and thus, Balter never received a notice of his rights under COBRA; and (2) Tinsley, as the plan administrator, failed to notify Balter of his rights under COBRA.  *See* ECF No. 1 at ¶¶ 11–12, 19–20.  Thus, Balter claims that if he received the notice of his COBRA rights, "he would have exercised his right to continued health insurance coverage under COBRA."  ECF No. 1 at ¶ 13.

**II.    Legal Standard for Motion to Dismiss for Lack of Subject-Matter Jurisdiction.**

"A motion to dismiss for lack of standing challenges subject-matter jurisdiction pursuant to Rule 12(b)(1)."  *Carter v. Sw. Airlines Co. Bd. of Trs.*, No. 8:20-cv-1381-T-02JSS, 2020 U.S. Dist. LEXIS 234271, at *5, 2020 WL 7334504 (M.D. Fla Dec. 14, 2020) (citing *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003)).  Unlike when ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts can consider extrinsic evidence beyond the pleadings and "no presumptive truthfulness attaches to plaintiff's allegations" when a court considers a

2

challenge to subject matter jurisdiction under Rule 12(b)(1). *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted).

Additionally, if it is clear that the plaintiff cannot amend the complaint to plead sufficient facts, a court has the discretion to dismiss the case with prejudice. *See Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1260–61 (11th Cir. 2006). Denying leave to submit an amended complaint is "justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)).

### III. The Complaint should be dismissed with prejudice because Balter does not have standing to pursue his COBRA claim against Tinsley.

The allegations in the Complaint, as well as the undisputed facts in the Exhibits attached to the Motion,[1] clearly establish that Balter does not have Article III standing to maintain the COBRA claim asserted in the Complaint. Specifically, Balter has not alleged, and cannot allege, that he suffered a concrete injury or that the failure to provide him with the notice of his COBRA rights caused him to suffer any injury.

Article III's standing doctrine limits the jurisdiction of federal courts to "cases" and "controversies" and implicates the court's subject-matter jurisdiction. *Kenney v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021). In order to establish standing under Article III, "a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the defendant's actions; and (3) that 'the injury will be redressed by

---

[1] Tinsley is attaching the following documents as Exhibits 1–6 to the Motion: (1) Balter's Benefits Statement with ADP TotalSource at the time of his termination; (2) an unsworn declaration from Denisse Marti of ADP TotalSource; (3) a September 27, 2021 email from Balter; (4) the transcript from a September 27, 2021 phone call between Balter and a representative from ADP TotalSource; (5) a COBRA Conversion Enrollment form for Balter's family members that was executed by Balter and his wife; and (6) the transcript from an October 12, 2021 phone call between Balter and a representative from ADP TotalSource. Although Balter did not attach these documents to the Complaint, "the Court can properly consider the [documents] because [they] impact[] [Balter's] Article III standing and the Court's subject-matter jurisdiction." *See Carter*, 2020 U.S. Dist. LEXIS 234271, at *10 n.1 (citing *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008)); *see also Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (internal quotation marks omitted) (stating that matters outside the pleadings can be considered on a challenge to subject-matter jurisdiction and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case").

3

a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "An injury-in-fact is the 'invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "The causation element of Article III standing requires 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560).

The *Carter* case, which is a December 2020 case out of the Middle District of Florida involving a nearly identical issue to the issue presented here, provides a persuasive analysis on Article III standing:

> At issue here is whether Plaintiff established a concrete injury, and if she did, whether she established that Defendant's COBRA violations caused this injury.
>
> The Eleventh Circuit recently issued an en banc decision that guides this analysis. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020). In that case, the court reiterated that a bare procedural violation of a statute is not enough to show concrete harm. *Id.* at 924; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) (holding that a "bare procedural violation, divorced from any concrete harm" is not enough to support standing). Instead, a plaintiff must establish one of two things: (1) that the statutory violation resulted in actual harm—whether tangible or intangible; or (2) the violation "posed a material risk of harm to the plaintiff." *Godiva*, 979 F.3d at 928. If the answer to both of these inquiries is no, the plaintiff failed to establish standing. *Id.* Courts cannot "'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none,' and [courts] are powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'" *Id.* at 925 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)).

*See Carter*, 2020 U.S. Dist. LEXIS 234271, at *7–8 (alterations in original).

In *Carter*, the court held that the plaintiff lacked standing to bring her COBRA lawsuit because she failed to allege a sufficient injury. *See id.* at *9–10. In response to the plaintiff's lawsuit that her employer failed to provide her with timely and proper notice of her right to

4

elect COBRA coverage, the employer moved to dismiss the lawsuit for a lack of standing on grounds that the plaintiff failed to establish a concrete injury and causation. *See id.* at *4–5. First, the court found that the plaintiff failed to allege a concrete economic injury because she "already *had* healthcare coverage" following her termination that covered her medical costs as she was still covered under the employer's health plan until her grievance was rejected three months following her termination. *See id.* at *9. Second, the court held that the plaintiff failed to establish a concrete informational injury because she "failed to establish why she needed this information [the COBRA notice] in the first place" as she "already had health insurance during this period." *See id.* at *10–11. Thus, the court reasoned that it is

> unclear how Plaintiff could be injured by a lack of information about COBRA during a period when she had no need to elect COBRA coverage. And although Plaintiff is correct that—at the pleading stage of a case—general factual allegations of injury can suffice, *see Lujan*, 504 U.S. at 561, this is not a free pass around Article III. General factual allegations must still "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank NA*, 140 S. Ct. 1615, 1621, 207 L. Ed. 2d 85 (2020); *see also Iqbal*, 556 U.S. at 678–79. Plaintiff has not met this burden, and this claim must therefore be dismissed.

*Id.* at *11.

Here, Balter appears to assert both an economic injury[2] and an informational injury[3] resulting from Tinsley's alleged violation of Balter's COBRA rights. However, both claims fail for the same reasons as in *Carter*—specifically, Balter cannot establish that he suffered a concrete injury or that any such injury resulted from any alleged failure to provide him with a COBRA notice.

As a threshold matter, Balter cannot establish a concrete injury because he was not entitled to receive a COBRA notice as he was not enrolled in Tinsley's group health plan sponsored by ADP TotalSource at the time of his termination. Under COBRA, employees and their dependents can "extend health coverage under an employer's group health plan

---

[2] *See* ECF No. 1 at ¶ 23 (stating that "Balter is entitled to recover all the medical expenses he has incurred due to Tinsley's violations").

[3] *See* ECF No. 1 at ¶ 13 ("Had Balter received the COBRA notification in a timely manner, he would have exercised his right to continued health insurance coverage under COBRA.").

5

when coverage would otherwise be lost due to a 'qualifying event.'" *Carter*, 2020 U.S. Dist. LEXIS 234271, at *8. Termination of employment is considered a qualifying event, and following an employee's termination, "[t]he employer must notify its healthcare administrator of the employee's termination within 30 days and the administrator then must notify the employee of her continuation right within 14 days." *See id.* (internal citations omitted) (citing 29 U.S.C. §§ 1163(2), 1166(a)(2), 1166(a)(4)(A), 1166(c)). Here, Balter's Benefits Statement from ADP TotalSource clearly shows that the only active benefit that he was enrolled in at the time of his termination was voluntary life insurance. *See* Ex. 1.[4] Stated differently, Balter was not receiving health, dental, or vision insurance through Tinsley's group health plan sponsored by ADP TotalSource when he was terminated. *See* Ex. 1. This is corroborated by the unsworn declaration from Marti stating that Balter was not enrolled in the group health plan coverage through ADP Total Source, and thus, he was not receiving health, dental, or vision coverage through Tinsley or ADP TotalSource at the time of his termination from Tinsley. *See* Ex. 2. As Balter was not enrolled in Tinsley's group health plan at the time of his termination, he was not entitled to any COBRA benefits or COBRA notices. *See Rogers v. I D Design, Inc.*, No. 1:06-cv-2101-CAP-WEJ, 2009 U.S. Dist. LEXIS 135204, at *26 (N.D. Ga. Mar. 6, 2009) (emphasis added) (citing 29 U.S.C. § 1161(a)) (stating that COBRA continuation coverage is only provided "to qualified beneficiaries *who would lose coverage* under the [group health] plan as the result of a qualifying event"), *report and recommendation adopted by* 2009 U.S. Dist. LEXIS 135183 (N.D. Ga. Apr. 17, 2009). Thus, as Balter had no right to receive any notices under COBRA, Balter has not suffered a concrete injury resulting from any lack of notice and does not have standing to pursue his claims.

In fact, Balter made several statements prior to his termination that he was not enrolled in Tinsley's group health plan and that he did not want to receive any health insurance

---

[4] Tinsley was not obligated under COBRA to provide an individualized notice to Balter regarding his life insurance conversion rights. *See Gonzalez v. Wells Fargo Bank, N.A.*, No. 12-80937-civ-Marra, 2013 U.S. Dist. LEXIS 139916, at *40–41, 2013 WL 5435789 (S.D. Fla. Sept. 27, 2013) (citing *Austell v. Raymond James & Assocs., Inc.*, 120 F.3d 32 (4th Cir. 1996)) (holding that the plaintiff's COBRA life insurance conversion claim is dismissed with prejudice because the COBRA notice requirements are inapplicable to life insurance); *cf. Walker v. Fed. Express Corp.*, 492 F. App'x 559, 565–66 (6th Cir. 2012) (holding that the Employee Retirement Income Security Act does not require the employer to notify employees of their life insurance conversion rights).

coverage through Tinsley.  First, in a September 27, 2021 email, Balter stated that he "un-enrolled" from Tinsley's health plan.  *See* Ex. 3 at p. 1.  Second, during a call on the same day with a representative from ADP TotalSource, Balter made the following statements:

- **Balter**: "[Y]ou can help me unenroll in my, uh, health insurance."

- **Balter**: "The death and the AD&D, I think there's AD&D, and another death, uh, life insurance policy as the employee I keep, so I need to stay on this as the employee with the employee information but *with no health insurance*."

- **Balter**: "So I need nobody enrolled in health insurance.  All I need is whatever the life insurances are, the life and the AD&D, that they [Balter's family members] remain as the beneficiaries with those.  But *nobody's got any health insurance coverage. Period*."

- **ADP TotalSource Representative**: "[S]o you do not want insurance for you or your family through your employer or ADP, right?"

  **Balter**: "Health insurance.  Correct."

  **ADP TotalSource Representative**: "Health insurance.  Right.  Correct.  Just health insurance."

  **Balter**: "Yes."

  **ADP TotalSource Representative**: "So, but, the dental and the vision, okay.  Okay.  Because when I terminate them, it's, they're gone.  Okay.  Alright.  Right?  Just the medical?  Okay.  Yes?  I'm going to terminate."

  **Balter**: "Yes."

  **ADP TotalSource Representative**: "*Laughs* Alright, so, alright.  No more health insurance.  But there is dental and there is vision, so."

  **Balter**: "Okay.  We'll waive those too."

  **ADP TotalSource Representative**: "You don't want those either?"

7

> **Balter**: "No, no. Anything tied to the health insurance."
>
> **ADP TotalSource Representative**: "Alright. They're all gone. So, got it. So now you should be able to,"
>
> **Balter**: "The only thing that should be left, should be whatever life insurance & AD&D and they [Balter's family members] remain as beneficiaries."

*See* Ex. 4 at pp. 1, 2, 3–4 (emphasis added). Thus, Balter's own statements show that he did not suffer a concrete injury due to any lack of notice of his COBRA rights because he in fact had no right to receive any notices under COBRA since he was not enrolled in Tinsley's group health plan at the time of his termination.

Even if Balter was entitled to receive a COBRA notice following his termination, which he was not, his COBRA claim would still fail for a lack of standing. First, Balter did not suffer an economic injury through any lapse in insurance coverage because he maintained continuous health insurance through Medicare. As established in the Cobra Conversion Enrollment form for Balter's family members and Balter's own statements to two different ADP TotalSource representatives, Balter received medical coverage through Medicare since 2019. *See* Ex. 4 at p. 1 (Balter stating on a September 27, 2021 phone call with an ADP TotalSource representative that he has received his health insurance coverage through Medicare for the past year and a half); Ex. 4 at p. 2 (Balter stating on a September 27, 2021 phone call with an ADP TotalSource representative that he is remaining on Medicare); Ex. 5 (Cobra Conversion Enrollment form stating that Balter receives medical coverage through Medicare and that he does not intend to replace that coverage); Ex. 6 at p. 2 (Balter stating on a October 12, 2021 phone call with an ADP TotalSource representative that he is on Medicare). Thus, similar to the plaintiff in *Carter* who maintained her health insurance following her termination, Balter "already *had* healthcare coverage" following his termination through his Medicare coverage, which would cover his medical expenses. *See Carter*, 2020 U.S. Dist. LEXIS 234271, at *9.

Second, Balter did not suffer an informational injury resulting from not receiving a COBRA notice because, similar to the plaintiff in *Carter*, he had no reason to elect COBRA coverage following his termination as he was already receiving health insurance through Medicare. Although the allegations in the Complaint make it appear as though Balter

8

required COBRA coverage for his health insurance, the Cobra Conversion Enrollment form and Balter's statements to ADP TotalSource representatives contradict the allegations in the Complaint by showing that Balter did not need health insurance coverage through COBRA as he was covered through Medicare. *See* Ex. 4 at pp. 1, 2; Ex. 5; Ex. 6 at p. 2. At best, Balter has simply alleged a technical, procedural violation of COBRA, which did not cause him any actual harm or pose a material risk of harm to him. This is insufficient to establish his standing to proceed with this litigation. *See Carter*, 2020 U.S. Dist. LEXIS 234271, at *7–8 (citing *Spokeo*, 578 U.S. at 341; *Godiva*, 979 F.3d at 928).

Thus, it is clear that Balter does not have standing to pursue his COBRA claim against Tinsley because he cannot allege a concrete injury or that any failure on the part of Tinsley to provide him with his COBRA notice caused him any injuries. As Balter lacks the required elements to establish standing to proceed with this litigation, and any attempt to amend the Complaint to establish standing would be futile, the Complaint should be dismissed with prejudice for a lack of subject matter jurisdiction.

## IV. CONCLUSION

Based on the foregoing reasons, Tinsley respectfully requests that the Court dismiss the Complaint with prejudice.

In accordance with Local Rule 7.1(a)(3), the undersigned has conferred with Balter's counsel in a good faith effort to resolve the issues raised in the Motion but has been unable to do so.

February 4, 2022

Respectfully submitted,

*s/Susan Potter Norton*
Susan Potter Norton
Florida Bar No. 201847
snorton@anblaw.com
**ALLEN NORTON & BLUE, P.A.**
121 Majorca Avenue, Suite 300
Coral Gables, FL 33134
Tel.: (305) 445-7801
Fax: (305) 442-1578
*Counsel for Defendant*

SPDN-868764429-2981293

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 4, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Scott M. Behren, Esq, Behren Law Firm, 2893 Executive Park Drive, Suite 110, Weston, FL 33331, scott@behrenlaw.com.

*s/Susan Potter Norton*
Attorney

SPDN-868764429-2981293